**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

ERNIES MARKET,

        Plaintiff,

    v.

UNITED STATES OF AMERICA,

        Defendant.

1:20-cv-3285-NLH-SAK

**OPINION**

---

**APPEARANCES**:

John P. Morris, Esq.
142 West Broad Street
P.O. Box 299
Bridgeton, New Jersey 08302

    *Attorneys for Plaintiff Ernies Market*

Philip R. Sellinger, Untied States Attorney,
By Peter G. Vizcarrondo, Assistant U.S. Attorney
401 Market Street
4th Floor
Camden, New Jersey 08101

    *Attorneys for Defendant the United States of America*

**HILLMAN**, District Judge

    This matter comes before the Court by way of a Motion for Summary Judgment, [Docket Number 17], filed by Defendant United States of America (herein "Defendant") seeking judgment in its favor as to all counts of the Complaint [Dkt. No. 1] filed by Plaintiff Ernies Market (herein "Plaintiff" or "Ernies Market" or the "Store").  The Court will grant Defendant's motion.

I.   <u>**BACKGROUND**</u>

The court finds that the following facts are supported by the evidence of record and are undisputed.[1]

A.   **The Supplemental Nutritional Assistance Program**

This case centers on the Supplemental Nutritional Assistance Program ("SNAP"), which is administered by the Food and Nutrition Service of the United States Department of Agriculture (the "FNS").  *See* 7 U.S.C. §§ 2011-2036; 7 C.F.R. § 271.3.  SNAP provides assistance to eligible households by supplementing their available funds to spend on food items.  7 §§ U.S.C. 2011, 2013.  Participants use their SNAP benefits through an electronic benefit transfer ("EBT") card to purchase eligible food items at authorized stores, and the United States then redeems those benefits by paying the store the full, face value of the benefits.  *Martinez Grocery II v. United States*, 2019 WL 4727924, at *1 (D.N.J. Sept. 29, 2019); *see also Yennes Food Mart v. United States*, 2018 WL 1354446, at *3 (W.D. Ky. Mar. 15, 2018).

---

[1] These facts are derived from Defendant's Local Civil Rule 56.1 Statement of Material Facts Not in Dispute [Dkt. No. 17-2] and the exhibits specifically referenced.  Plaintiff neither responded to Defendant's Rule 56.1 Statement nor submitted its own.  Accordingly, the Court adopts Defendant's Rule 56.1 Statement because "facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted." *Hill v. Algor*, 85 F. Supp. 2d 391, 408 n. 26 (D.N.J. 2000); *see also* Local Civil Rule 56.1(a).

The FNS manages stores' participation in the SNAP program, including electronically monitoring EBT transactions for potential fraud and abuse.  7 U.S.C. § 2011.  For example, the FNS monitors EBT transactions to ensure SNAP-approved retailers do not "traffick"[2] in benefits, *i.e.,* exchanging food stamp

---

[2] As defined by the FNS's regulations, trafficking in SNAP benefits means:

> (1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone;

> (2) The exchange of firearms, ammunition, explosives, or controlled substances, as defined in section 802 of title 21, United States Code, for SNAP benefits;

> (3) Purchasing a product with SNAP benefits that has a container requiring a return deposit with the intent of obtaining cash by discarding the product and returning the container for the deposit amount, intentionally discarding the product, and intentionally returning the container for the deposit amount;

> (4) Purchasing a product with SNAP benefits with the intent of obtaining cash or consideration other than eligible food by reselling the product, and subsequently intentionally reselling the product purchased with SNAP benefits in exchange for cash or consideration other than eligible food; or

> (5) Intentionally purchasing products originally purchased with SNAP benefits in exchange for cash or consideration other than eligible food.

> (6) Attempting to buy, sell, steal, or otherwise affect an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal

allotments for cash.  *See* 7 C.F.R. § 271.2.  Violations of the
SNAP program are rigorously sanctioned, even a single instance
of trafficking can permanently disqualify a retailer from the
program.

### B.   Ernies Market

Ernies Market is a small convenience-like, grocery store
located at 1500 Park Boulevard in Camden, New Jersey.  Plaintiff
became an authorized SNAP retailer on December 20, 2011.  As of
2018, pursuant to the FNS's investigation, there were twenty-two
other SNAP-participating retailers of equal or greater size
within one mile of Ernies Market.  Of these twenty-two other
retailers, one is a superstore, another is a supermarket,
another is a large grocery store, three are medium grocery
stores, and sixteen are small grocery stores like Ernies Market.

On November 9, 2018, the FNS conducted a site visit to
Ernies Market.  The FNS's visit demonstrated the Store had only
one cash register and did not provide customers with shopping
carts or baskets.  The investigation further documented that
Ernies Market consists of approximately 1,000 square feet with

---

identification numbers (PINs), or by manual voucher and
signatures, for cash or consideration other than eligible
food, either directly, indirectly, in complicity or collusion
with others, or acting alone.

7. C.F.R. § 271.2.

500 square feet of storage and storage freezers/coolers
containing non-foods, non-staple foods, and foods for hot and
cold preparation.  As a moderately stocked small grocery store,
the FNS concluded the Store had a limited inventory of staple
food stock, including canned and pre-packed foods and snacks,
limited fresh produce, and limited frozen foods.  Although the
Store maintained a deli with meats, cheeses, and made-to-order
sandwiches as well as a kitchen that prepared hot food, Ernies
Market did not sell fresh meat and instead stocked SNAP
ineligible items, such as tobacco, mobile phones/phone cards,
automotive, health, beauty, cleaning, and paper products.

      **C.   The FNS Investigation**

      In 2018, the FNS began investigating Plaintiff after the
agency's "ALERT" system showed that Plaintiff's recent pattern
of SNAP transactions indicated possible trafficking.  As part of
the ensuing investigation, the FNS's staff collected Plaintiff's
SNAP transaction records for the time-period running from August
1, 2018 through January 31, 2019.  Defendant identified 211
suspicious transactions, which FNS analyzed against: (1) data
from nearby SNAP retailers, (2) the transaction histories of
certain nearby SNAP households, and (3) known patterns of SNAP
benefit trafficking.

      On May 30, 2019, pursuant to the investigation's findings,
the FNS issued Plaintiff a Letter ("Charging Letter") charging

Ernies Market with SNAP benefits trafficking based on the 211 suspicious transactions.  The FNS found the 211 suspicious transactions fell into two patterns:

1. The first suspicious pattern includes 21 sets of rapid and repetitive EBT transactions that occurred in short periods of time from the same households ("Pattern 1").[3]

2. The second suspicious pattern involved 190 EBT transactions that were excessively large compared to the average convenience store transaction in New Jersey ("Pattern 2").[4]

The FNS further compared Plaintiff's EBT transaction data against four nearby small grocery stores and one medium grocery store, finding that Ernies Market had significantly more transactions corresponding to Patters 1 and 2 than the other stores.  In addition, the FNS also reviewed the shopping patterns of four households involved in the suspicious transactions during the review period and found that all of the households were also shopping at larger and better stocked

---

[3] These 21 sets of rapid EBT card transactions came from 17 different households and occurred within a 24-hour period.  For example, in 1 set of transactions, 1 household conducted 5 transactions within a 24-hour period totaling $166.22.  The FNS notes these multiple transactions over a 24-hour period are suspicious because stores use such methods to avoid high dollar transactions and are indicative of trafficking.

[4] 190 transactions were for $39.29 or more, and 76 transactions were for more than $50.00.  In finding these transactions indicative of trafficking, the FNS compared the transactions against the Store's physical makeup, inventory, and the traditional behavior of SNAP beneficiaries.

stores, in many cases making these visits on the same day or close in time to a suspicious transaction.  The FNS found it unreasonable for a household to spend such a large amount of SNAP benefits at Ernies Market, when the shopper had access to larger, better-stocked grocery options.  Accordingly, the FNS concluded the evidence warranted issuing the trafficking charge.

Although the Charging Letter notes that the default sanction for SNAP trafficking is permanent disqualification from SNAP participation, the letter also emphasized a retailer could instead request that the FNS consider a civil monetary penalty. Plaintiff did not timely pursue the civil penalty.

### D.   Administrative Proceedings

Plaintiff submitted two letters in response to the Charging Letter.  Plaintiff requested a review of the Charging Letter pursuant to 7 C.F.R. §§ 279.2 and 279.3, claiming the FNS overlooked key information, such as:

- Ernies Market is the only retail store in a five-block radius, thus the only SNAP eligible store for the area in a predominantly low to no income, African American community.
- The "computer algorithm or formula" the FNS uses to flag transactions is flawed.
- The flagged transactions are not prohibited by law and do not meet the definition of trafficking.
- Regarding the Patter 1 transactions, Plaintiff claimed there is no law against repeat, multiple EBT card transactions within a short period of time.  The Pattern 1 transactions are explained as "[n]ot unusual or irregular . . . simply explicable human behavior," giving the example that some of transactions occurred before the Super Bowl.

- Regarding the Patter 2 transactions, Plaintiff claimed there is no law establishing a "monetary amount cap" on EBT transactions.

The FNS analyzed the submitted information and concluded the evidence provided did not sufficiently explain the suspicious transactions.  The FNS determined that, based on the evidence in this case—the transactions listed in the Charging Letter, the shopping patterns of households, and the high number of unusual transactions that exist at the subject store—trafficking was more likely than not occurring and a permanent disqualification was the appropriate sanction.

In reaching this decision, the FNS again compared Ernies Market's transactions to the average small grocery store in the area and found the patterns at the Store to be abnormal. Contrary to Plaintiff's claim that it was the only EBT-eligible store in area, the FNS emphasized there are twenty-two authorized stores located within one mile of the store, including two stores located within 0.44 miles.  The FNS found it suspicious that the average SNAP transaction amount and total SNAP dollar volume were significantly higher at Ernies Market than the two comparable stores.  In addition, the FNS determined Ernies Market had significantly more red flags on certain EBT transactions than the two comparable stores.

The FNS rejected Plaintiff's arguments regarding Pattern 1 transactions.  While returning to a store more than once per day

may not be unusual, the FNS concluded that the Pattern 1 flagged
activities were.  For example, the FNS found that one
household's five SNAP transactions in one day, totaling $166.22,
was suspicious and indicative of trafficking.  The FNS further
found it inexplicable that multiple households would conduct
multiple and high dollar SNAP transactions in such short periods
of time,[5] spending so much of their SNAP benefits at one small
grocery store.

    The FNS also rejected Plaintiff's arguments regarding
Pattern 2 transactions.  The FNS emphasized the Store's
inventory and layout did not support the Pattern 2 transactions:
the store has limited staple food stock, does not sell fresh
meat, has no shopping carts or baskets, and has minimal counter
space.  During the relevant review period, Ernies Market had
substantially more transactions between $40.00 and $59.99 than
other comparable stores.  The FNS further considered the
households who made these transactions, one of which, for
example, despite making multiple and high dollar EBT
transactions at the Store, also shopped at nearby supermarkets
and superstores.  The FNS thus concluded it was not plausible
that this household would spend so much of their SNAP benefits

---

[5] The seventeen households conducted three or more transactions in
a period of five to twenty-nine hours.

at this small grocery store when they clearly had access to and utilized larger and better stocked stores.

On December 13, 2019, the FNS issued a Determination Letter ("Determination Letter") to Plaintiff of its findings and conclusions.  The Determination Letter notes that the transaction data is indicative of trafficking and that the FNS was imposing a permanent disqualification penalty.  The Determination Letter further notes that permanent disqualification was required under the controlling regulations and that Plaintiff was ineligible for just a civil monetary penalty because the Store failed to submit evidence demonstrating it had established and implemented an effective compliance program to prevent SNAP trafficking violations in the future.

On December 20, 2019, Plaintiff submitted a letter to the FNS's Administrative Review Branch ("ARB") requesting administrative review of the trafficking determination. Plaintiff's subsequent submissions to the ARB reiterated many of the previously raised allegations.  Plaintiff this time, however, added that the FNS may have failed to account for the "cultural differences" in Ernies Market's clientele that might account for certain large purchases, explaining the Store sells $25.00 buckets of ice cream.  Plaintiff also claimed the FNS may have failed to consider that two-thirds of the Store's patrons

did not have cars, making Ernies Market the easiest location for them to shop using SNAP benefits.

On February 25, 2020, after reviewing the record against the parties' positions, an Administrative Review Officer ("ARO") issued the Final Agency Decision ("FAD").  The ARO found sufficient evidence of trafficking to support the FNS's penalty permanently disqualification the Store from SNAP.  The ARO noted that Plaintiff bore the burden of proving by a preponderance of the evidence that the administrative record should be reversed. However, after reviewing the case history, controlling law, the summary of charges, and Plaintiff's claims, the ARO determined Plaintiff failed to meet its burden.

The ARO found both Patterns 1 and 2 were indicative of trafficking for the reasons expressed above in the FNS's Charging and Determination Letters.  The ARO determined that, based on the Store's inventory and characteristics, customers' shopping histories, and the aforementioned other metrics, Plaintiff failed to prove a logical explanation for why the Store's SNAP transaction patterns were significantly different from similarly sized stores in that region.  As for Plaintiff's contention that two-thirds of its customers lack vehicles thereby explaining the SNAP transaction patterns, the ARO found that the Store's customers were also shopping at other, larger, regional stores, thus indicating that transportation was not at

issue.  In addition, the ARO noted that Plaintiff offered no evidence to support its allegations that the FNS's ALERT system is flawed or failed to account for certain cultural differences in the Store's clientele.

The ARO concluded that the abnormal transactions patterns identified in the Charging Letter were similar to patterns observed in other investigations of stores engaging in trafficking.  Therefore, based on the knowledge of prior trafficking case patterns and a paucity of evidence presented by Plaintiff to otherwise demonstrate the legitimacy of the challenged transactions, the ARO found the most likely explanation for the suspicious transactions was trafficking. The ARO likewise found the mandatory penalty of a permanent ban from SNAP was appropriately reached.

## II.  <u>STANDARD OF REVIEW</u>

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would

permit a reasonable jury to find for the nonmoving party."
*Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).  All
facts and inferences must be construed in the light most
favorable to the non-moving party.  *Peters v. Del. River Port
Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

In deciding a motion for summary judgment, the court's role
is not to evaluate the evidence and decide the truth of the
matter, but to determine whether there is a genuine issue for
trial.  *Anderson*, 477 U.S. at 249.  Credibility determinations
are the province of the factfinder, and thus at the summary
judgment stage credibility issues should be resolved against the
moving party.  *Big Apple BMW v, Inc. v. BMW of N. Am., Inc.*, 974
F.2d 1358, 1363 (3d Cir. 1992); *Meyer v. Riegel Prods. Corp.*,
720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, "[t]he mere
existence of a scintilla of evidence," without more, will not
give rise to a genuine dispute for trial.  *Anderson*, 477 U.S. at
252.  In the face of such evidence, summary judgment is still
appropriate "[w]here the record ... could not lead a rational
trier of fact to find for the nonmoving party."  *Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587
(1986).

III. <u>**DISCUSSION**</u>

Plaintiff's Complaint alleges one claim, seeking trial *de
novo* regarding Defendant's finding that Plaintiff engaged in

trafficking.  *See* Complaint [Dkt. No. 1], at ¶¶3-10.

### A.   Legal Standard

The SNAP program provides for judicial review of any final determination by the FNS for aggrieved parties.  7 U.S.C. § 2023(a)(13).  The statute states that "[t]he suit ... shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue...."  7 U.S.C. § 2023(a)(15).  Courts apply a two-step analysis in such cases.  "First, the [c]ourt must review whether a violation occurred.  For this inquiry, the plaintiff challenging the administrative action has the burden of proving by a preponderance of the evidence that the charged SNAP violation did not occur."  *White Horse No. 2 v. United States*, 2012 WL 1533468, at *2-3 (D.N.J. Apr. 30, 2012) (*citing Han v. Food and Nutrition Service*, 580 F.Supp. 1564, 1567 (D.N.J.1984) ("plaintiff bears the burden of establishing by a preponderance of the evidence that the agency's determination to disqualify [plaintiff] from participating in the Food Stamp Program is factually incorrect")).

Regarding a plaintiff's right to trial *de novo*, the Third Circuit has held that "*de novo* review is compatible with a summary judgment disposition if there are no material facts in dispute."  *Freedman v. U.S. Dep't of Agric.*, 926 F.2d 252, 261 (3d Cir. 1991) (*citing In Suk Pak v. U.S. Dep't of Agric.*, 690

F. Supp. 322 (M.D. Pa. 1987), aff'd, 853 F.2d 918 (3d Cir. 1988); *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975) ("[d]espite the trial de novo provision, it is clear that summary judgment is a proper means of disposing of requests ... where there are presented no genuine issues of material fact")).

If a plaintiff fails to meet its burden to show that there was no violation of the SNAP program, the court then turns to step two: determining whether the sanction imposed by FNS is appropriate.  "The standard of review for the imposition of a sanction under SNAP is whether the Secretary's action was arbitrary or capricious, i.e., whether it was 'unwarranted in law or without justification in fact.'"  *Atl. Deli & Grocery v. United States*, 2011 WL 2038758, at *5 (D.N.J. May 23, 2011) (*quoting Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir. 1981)).  Therefore, the plaintiff "has the burden of introducing evidence into the record that would allow the Court to conclude that the agency's determination ... is unwarranted in law or fact." *Id.*

**B.    Step One: SNAP Violation**

As explained, *supra*, the Third Circuit has determined that the statutory requirement of a trial *de novo* can be satisfied through a motion for summary judgment, where there are no material facts in dispute.  *Freedman*, 926 F.2d at 261; *see also Modica*, 518 F.2d at 376.

15

Dispositively, the Court holds that Plaintiff has failed to present sufficient evidence to support a finding by a preponderance of the evidence that it did not traffick in SNAP benefits.  As set forth above, the EBT data demonstrated two sets of patters consistent with established SNAP trafficking.[6] Plaintiff's attack of and attempt to explain away these patterns are, as the FNS and the ARO found, either incomplete or inconsistent with the evidence, and thus insufficient to defeat summary judgment.  *See Irobe*, 890 F.3d at 380 ("The large number of aberrational transactions reflected in the Store's EBT database are adequate to ground a strong inference of trafficking, especially given the Store's characteristics.

---

[6] *See*, *e.g.*, *Negash v. United States*, 772 F. App'x 34, 36-37 (4th Cir. 2019 ("the USDA rightfully concluded that there is no logical explanation for 72 individuals spending over $100 on convenience store items when Appellants' store does not have a single shopping cart or basket [and] households were visiting larger grocery stores in addition to Appellants' store."); *Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 379 (1st Cir. 2018) (affirming the grant of summary judgment as the government presented substantial evidence of trafficking based on patters of irregular commercial activity of unusually "high-dollar SNAP transactions" and "multiple purchases in quick succession"); *Cheema v. United States*, 365 F. Supp. 2d 172, 185-187 (D. Mass. 2019) (multiple transactions made from the same EBT account in short time frames, unusually large transactions); *SS Grocery, Inc. v. U.S. Dep't of Agric.*, 340 F. Supp. 3d 172, 181 (E.D.N.Y. 2018) (recipients making multiple transactions in unusually short time frames, recipients making excessively large purchase transactions); *McClain's Mkt. v. United States*, 214 F. App'x 502, 505 (6th Cir. 2006) ("McClain's has simply offered no evidence to explain the volume, frequency, or size of the transactions identified by the government").

While that inference is rebuttable, the allocation of the burden of proof dictates that the Store must point to some significantly probative evidence to rebut it (and, thus, fend off summary judgment).").

Rather than attempt to meet its burden by offering even a scintilla of contradictory evidence, Plaintiff presents bald assertions that (1) there are issues of fact in whether the Store engaged in trafficking, (2) the Store did not violate SNAP regulations, and (3) the FNS's methods were constitutionally flawed.  While Plaintiff alludes to proposed certifications from the Store's cashiers as creating a triable issue on the question of trafficking, the Store failed to submit any certifications for consideration here.  Likewise, again failing to provide any supporting evidence, Plaintiff re-harps on its earlier claims that the FNS and the ARO rejected, namely that the FNS's analysis: (1) "does not take into consideration the unique location of Ernies Market within a 5-block radius; [(2)] the one mile radius relied upon does not take into consideration that 2/3 of Ernies population has not means of transportation along with the predominate African-American population, presumably lower income, and [(3)] the 2 failed undercover investigations attempted to ensnare Ernies Market in illegal or improper EBT transactions."  The Court rejects these arguments as Plaintiff failed to present any supporting evidence and finds the

arguments are contradicted by the record, which is captured in the aforementioned findings and conclusions of the FNS and the ARO.

Next, Plaintiff asserts, in a lone paragraph, that "the failure of Congress to define 'trafficking' results in an unconstitutional delegation to the USDA which vagueness also implicates due process concern with no adequate notice to retail store or EBT cardholder." As to what due process and vagueness issues are implicated, the Court is at a loss as Plaintiff failed to provide any further explanation beyond the bald claim. As far as the Court can discern, Plaintiff's argument centers on the claim that the Store did not commit a SNAP violation because "Congress did not define trafficking in its enabling legislation" for the SNAP Regulations, thus the FNS's use of the "ALERT" system and the EBT transaction patterns cannot constitute trafficking. Plaintiff's Brief at 3.

Such a position is rejected out of hand as trafficking is well defined and accepted under the law. *E.g.*, *Irobe*, 890 F.3d at 375 ("Trafficking in SNAP benefits is unlawful, *see* 7 C.F.R. § 278.2(a); *see also* 7 U.S.C. § 2021(a)(1), (b)(3)(B), and a store engages in trafficking by accepting SNAP benefits in exchange for cash or other proscribed items, *see* 7 C.F.R. § 271.2. For instance, a store traffics when it "accept[s] food stamps for sales that never took place," allowing its customers

18

to receive "cash rather than merchandise.") (*quoting Idias v.
United States*, 359 F.3d 695, 698-99 (4th Cir. 2004)); *Grocery
Town Mkt., Inc. v. United States*, 848 F.2d 392, 393 n.1 (3d Cir.
1988) ("'Trafficking' is defined as 'the buying or selling of
[food stamp] coupons or ATP [Authorization To Participate] cards
for cash.'") (*quoting* 7 C.F.R. § 271.2 (1987)).

Therefore, the Court finds that Ernies Market has failed to
present any evidence that the FNS's determination was incorrect,
much less than to carry its burden of proving such by a
preponderance of the evidence.

### C.   Step Two: Arbitrary or Capricious Sanction

The Court next turns to step two, which requires the
determination of whether the sanction imposed by the FNS was
arbitrary or capricious.  Plaintiff has the burden to show that
the FNS's decision to permanently ban it from SNAP was
"'unwarranted in law or without justification in fact.'" *Atl.
Deli & Grocery v. United States*, 2011 WL 2038758, at *5 (D.N.J.
May 23, 2011) (*quoting Willy's Grocery v. United States*, 656
F.2d 24, 26 (2d Cir. 1981)).

Plaintiff fails to provide any argument to support its
burden with respect to step two as the papers in opposition to
the motion for summary judgment are silent as to whether the
sanction imposed was arbitrary or capricious.  Moreover, even
Plaintiff's threadbare Complaint fails to assert that the FNS's

sanction of permanent disqualification was arbitrary or
capricious.  Nonetheless, Defendant moves for summary judgment
on this issue, and correctly avers that Plaintiff has abandoned
the issue.[7]

Assuming *arguendo*, for purposes of this motion only, that
Plaintiff does challenge the severity of the sanction imposed,[8]
the Court holds that the FNS reached the correct sanction, and
therefore did not arbitrarily or capriciously impose the
sanction of permanent disqualification.  The FNS determined that
Plaintiff violated the regulations governing the SNAP program by
trafficking, thus a permanent ban was the required sanction.
The penalty imposed was not within the FNS's discretion; rather,
a permanent ban was required under the governing regulations

---

[7] *See, e.g., Brenner v. Twp. Of Moorestown*, 2011 WL 1882394, at
*11 (D.N.J. May 17, 2011) (holding "a plaintiff's failure to
respond to defendant's arguments on summary judgment constitutes
an abandonment of these causes of action and essentially acts as
a waiver of these issues"); *Fonti v. Health Pros. & Allied Emps.*,
2017 WL 1197759, at *6 n.6 (D.N.J. Mar. 21, 2017); *Bernard v. Webb-
McRae*, 2020 WL 1329934, at *2 (D.N.J. Mar. 23, 2020).

[8] As the Court thoroughly searched the docket to discern a
possible argument, the only position Plaintiff asserts is a
request that the Court grant appropriate relief, "which should
include, at best, a reasonable specified period of time for
disqualification from SNAP as per 7 U.S.C. § 2021(a), (b)."
Complaint [Dkt. No. 1], at ¶ 10.  While Plaintiff appears to
request a disqualification from further participation in SNAP
for a reasonable period of time, not to exceed 5 years, as this
is Plaintiff's first occasion for disqualification, as per 7
U.S.C. § 2021(b)(1), such a request ignores 7 U.S.C. §
2021(b)(3)(B) and 7 C.F.R. §§ 278.6(e) and(i) which were
correctly considered and applied based on the record.

based on the record presented.  *See, e.g.,* 7 U.S.C. §§ 2021(a) and (b)(3)(B); 7 C.F.R. § 271.2; 7 C.F.R. §§ 278.6(e) and (i); *Grocery Town Mkt., Inc. v. United States*, 848 F.2d 392, 393 (3d Cir. 1988) (holding 7 C.F.R. § 278.6(e)(1) "mandates automatic disqualification for any trafficking offense"); *Idias v. United States*, 359 F.3d 659, 697 (4th Cir. 2004) (holding that "a store that is caught trafficking in food stamps even one time must be permanently disqualified from the Food Stamp Program, unless the Secretary of Agriculture determines that the store had in place an effective anti-trafficking policy").

FNS presented Plaintiff with the opportunity to present documentation, as required by 7 C.F.R. § 278.6(i), that may have allowed for a civil money penalty instead of permanent disqualification, yet Plaintiff did not comply.  Therefore, Plaintiff has failed to meet its burden to show that FNS's actions were arbitrary or capricious.  Defendant's motion for summary judgment shall be granted in full.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion for Summary Judgment [Dkt. No. 17] will be granted.

An appropriate Order follows.


Dated: <u>February 1, 2022</u>          <u>s/ Noel L. Hillman</u>
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.